[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
On May 11, 1994, the plaintiff filed an action in this court seeking a dissolution of his marriage to the defendant. A trial was held on February 28, 1996. After considering the evidence presented, the court finds the following facts and issues the following orders.
The parties were married on July 9, 1966 in Milford, CT Page 1598-G Connecticut. The plaintiff has resided continuously in the State of Connecticut for at least one year prior to the filing of the complaint in this action. There were three children born to the plaintiff and the defendant, all of whom are presently over the age of eighteen. One of these children, Carrie, is currently a junior at Springfield College.
The parties also have another child, Brian Rizza, who is their legally adopted child. Brian is 17 years old and currently a senior in high school. He presently resides with the plaintiff. The plaintiff and the defendant are awarded joint custody of Brian with the primary physical residence of Brian to be with the plaintiff.
The parties have reached an agreement that the plaintiff, commensurate with his financial ability at the time, will contribute to the college-related expenses of the children until each reaches the age of 23 or graduates from college, which ever shall occur first. The court approves this agreement and enters it as an order of the court. This agreement shall not be deemed a third party beneficiary contract.
The plaintiff is 52 years old and the defendant is 51 years old. They both have masters degrees, the plaintiff's is in business and the defendant's is in education. The plaintiff is employed as an operations manager at Phillips Technology and the defendant works as a school teacher in the Milford public schools. They are both in good health.
Although each party points its finger at the other as the person at fault for the breakdown of their marriage, the court did not hear evidence sufficient to warrant finding that fault lies primarily with a particular party. The marriage has clearly broke down irretrievably and each party bears some responsibility for that unfortunate occurrence.
By any measure, the parties' marriage was a long one. Both parties hold responsible positions and receive substantial incomes. While the defendant is now employed, for a large portion of the marriage she remained at home and was the primary caretaker for the four children.
The court finds the plaintiff's gross annual income, including base salary and bonus, to be $121,376. The plaintiff presently earns, after recently receiving a 4% raise, a base CT Page 1598-H salary of $99,476 per year. He has also received a substantial bonus each of the last four years. The amount of the bonus, if any, depends on the company's performance each year. In 1995, the bonus was $21,900. Last year's bonus of $21,900 is an amount that the plaintiff can reasonably be expected to rely upon as an annual award.
This year he believes he will receive a $30,000 bonus in addition to his base salary. However, the plaintiff testified that this bonus will be based on an extraordinary year for the company. Moreover, he previously took an advance of $17,000 on his 1996 bonus in order to pay various expenses in 1995. The plaintiff also testified that he expects to receive a federal income tax refund of approximately $10,000 this year. The tax refund together with the remaining bonus amount of $13,000 expected this year will result in a gross annual income approximating $122,000 in 1996.
Based on the deductions contained in the plaintiff's financial affidavit, the court finds the plaintiff's net weekly income to be $1,378.
The defendant has a gross annual income of $42,952. The court finds that her net income is $561 per week. This figure is slightly higher than that reported on the defendant's financial affidavit because it includes the weekly amount of $25 deducted for her TSA.
The parties have accumulated significant assets during the course of their marriage. These assets include the marital home at 35 Maple Street, Milford, Connecticut and a condominium in Sherbourne, Vermont. I find the fair market value of the home in Milford to be $236,000 and the fair market value of the Vermont condominium to be $74,000.
The plaintiff also testified that the defendant's father had previously bestowed upon them a gift of $25,000 in cash. These funds were kept in a safe deposit box. At the time of their separation in April of 1994, the plaintiff testified that $13,000 remained. In light of all the evidence, the defendant's testimony that the money constituted a loan from her father is not credible. As a result, her testimony that no money remained at the time of the separation is also not credible. The court finds that the initial $25,000 was a gift to the parties and that $13,000 remains unaccounted for by the defendant. CT Page 1598-I
In determining the orders contained herein, I have carefully considered all the statutory criteria contained in Conn. General Statutes § 46b-81 as it relates to the assignment of property, § 46b-82 as it relates to the award of alimony and § 46b-84 as it relates to the award of child support. The court enters the following orders:
1. The marriage is ordered dissolved on the grounds of irretrievable breakdown.
2. The plaintiff shall pay the defendant the amount of $550 each week as periodic alimony until the death of either party, the defendant's remarriage or cohabitation by the defendant pursuant Conn. General Statutes § 46b-86(b).
3. The plaintiff shall convey by quitclaim deed his right, title and interest in the property known as 35 Maple Street, Milford, Connecticut, to the defendant, subject to any mortgages on said property. The defendant shall assume responsibility for the mortgages and shall indemnify and hold the plaintiff harmless with respect thereto.
4. The defendant shall transfer by quitclaim deed her right, title and interest in the condominium in Sherbourne, Vermont, to the plaintiff, subject to any mortgages on said property. The plaintiff shall assume responsibility for the mortgages and shall indemnify and hold the defendant harmless with respect thereto.
5. Each of the parties shall keep in their entirety any pensions, IRA, 401k accounts or other retirement accounts listed on their respective financial affidavits.
6. Each of the parties shall be solely responsible for payment of the liabilities listed on their respective financial affidavits except that the plaintiff shall be solely responsible for payment of the joint Visa credit card balance and the defendant shall be solely responsible for payment of the People's Bank credit line.
7. With respect to the personal property that remains in dispute, the plaintiff is awarded possession of the following items: the silver pitcher, the barometer, the oriental rug, the power tools, the trains, the stamp and coin collections and any books that were used primarily by him. All other personal CT Page 1598-J property remaining in the marital home shall become the property of the defendant.
Jon M. Alander, Judge